The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning. I see Mr. Forbes and I see Mr. Hensley, so let's proceed. Our first case for our committed warning is Pate v. Kijakazi, case number 20-3207. Mr. Forbes, you may proceed. I hope I pronounced those names correctly. I think so, Your Honor. I guess we're all learning. I represent the appellant. I did the work before the District Court but not before the agency. Essentially, this is a pretty traditional case in one sense because it relies on the work preclusive limitations in relation to absence, which would be related to persistence. And on task and concentration, they were all embedded in the psychiatrist report that was noted in the District Court brief. Mr. Forbes, can I just confirm, please? Yes. You originally sought benefits in connection with your clients, both mental and physical impairments. Yes. And it looks like you were just appealing on the mental impairments. I just wanted to confirm that's correct. Yeah, that's correct, Your Honor. I've tried the argument on the physical a number of times and it didn't work, so I decided not to pursue that up higher. And by that argument, I mean that generic argument. So, in this case, the ALJ just used the simple and routine limitation and that is a cognitive limitation, not necessarily a concentration persistence or pace limitation. And we think that's error, especially under this record. I mean, she was in long term psychotherapy under the care of a psychiatrist. Granted, I don't believe there were very many recent hospitalizations, but it was still a serious round of treatment. And the best evidence, I think, that the other side has is that she was able to concentrate during psychotherapy sessions sometimes. And that's noted in the record. But psychotherapy sessions are therapeutic, obviously. The therapist or psychiatrist knows how to keep the patient attentive during the session through the use of pacing of questions, type of questions, verbal cues. There's a lot of professional activation there that is not available in the competitive work environment. And so the psychiatrist work preclusive limitations are not inconsistent with what's happening in therapy because the psychiatrist is refocusing what's going on and looking at the competitive work environment at that point and not at the very empathetic and often safe therapeutic environment. So that's all I have right now, Your Honor. If I could, I'll say the rest. That's fine. Mr. Thank you, Your Honor. Good morning. I'm Jay Hinesley, and I represent the Appalachian in this case. Dale Jay's decision in this case is supported by substantial evidence and should be upheld. The sole issue Ms. Pate raises today is, of course, not a new one to this court in a line of cases on this issue, most recently in Pavlicek, but also including Kuykendall, Josephick, Saunders, Petluski, Orbonik, and others, the court has made it clear that the rules pertaining to moderate rating and concentration, persistence, or pace are not static, as Ms. Pate would lead this court to believe. Now, in Pavlicek, Your Honors, this court rejected the argument that there was an inherent inconsistency between a moderate rating in the broad area of concentration, persistence, or pace and the ability to perform simple, repetitive tasks on a consistent pace or at a consistent pace. This court noted that under the revised mental impairment regulations, which are applicable in this case, a moderate limitation rating is defined to mean that functioning on that in that area on a sustained basis is fair, and in turn, fair in ordinary usage does not mean bad or inadequate. This court in Pavlicek concluded that a moderate rating seems consistent with the ability to perform simple, repetitive tasks at a consistent pace. So, again, please bear in mind that a finding of a moderate rating means in the ALJ's decision, in the state agency decisions, and also as a reflection of the rating itself, it means fair functioning on a sustained basis. Therefore, no magic words are needed to accommodate a moderate concentration, persistence, or pace rating. Instead, of course, the ALJ must look to the evidence. Indeed, even seemingly generic limitations like limiting a claim at the simple, routine tasks with simple work-related decisions, like in this case, may properly account for a moderate rating in concentration, persistence, or pace, as long as they adequately account for the claimant's demonstrated psychological symptoms found in the record. Now, in this case, Your Honors, the ALJ's residual functional capacity determination sufficiently addressed how Ms. Pate's moderate rating in concentration, persistence, or pace affected her ability to stay on task, and the evidentiary record simply did not warrant limitations beyond those contained in the hypotheticals in the BE Vocational Expert. With little to no actual evidence of limitations, Ms. Pate is asking that this Court improperly re-weigh the evidence. So, let's take a look at, again, Your Honors, at what evidence supports the ALJ's residual functional capacity determination. Let's start with Ms. Pate's testimony. She testified only that she was, quote, starting to not want to engage in any social settings, end quote. She sometimes forgot things, had trouble remembering what she did the previous month or week, and sometimes forgot to take her medications, and sometimes struggled to concentrate and focus when she had too many things thrown at her at once. The ALJ limited her to performing simple, routine tasks with simple work-related decisions, as this limitation was directed at keeping Ms. Pate from being faced with multiple simultaneous tasks, which would potentially overwhelm her. In this case, the ALJ offered a specific explanation for accommodating Ms. Pate's severe mental impairment by finding that she was limited to simple and routine work tasks involving only simple work-related decisions. So, this case is actually strikingly similar in that respect to Kuykendall v. Saul, which we cite in our brief. The ALJ specifically discussed his approach to assessing Ms. Pate's mental residual functional capacity, acknowledging that, yes, she had deficits in concentration, persistence, or pace, but finding only that this limitation adversely affected her ability to understand, remember, and carry out detailed instructions. Accordingly, the ALJ limited Ms. Pate to simple, routine tasks with only simple work-related decision-making. The ALJ further explained that Ms. Pate consistently demonstrated logical thoughts, well-sustained attention and concentration, and the ability to understand and obey commands, all of which supports the RFC determination, which is reflective of the most a claimant can do in the workplace given her functional limitations. Your Honor, Ms. Pate's treatment session notes regularly documented that her thought process was logical and goal-directed. Her attention and concentration were described as aroused and well-sustained, and her intellectual functioning appeared average. These findings also remained consistent during her follow-up sessions. The ALJ was explicit in his rationale. As far as activities, the ALJ observed that Ms. Pate went out alone, shopped in stores, cared for her son, including helping him with homework, and prepared complete meals. Ms. Pate further testified to volunteering at the United Way putting tables and baskets together for raffles. The ALJ noted that Ms. Pate's ability to drive, handle her own money, including paying bills and counting change, and her enjoyment of reading and watching television further demonstrated her ability to focus. As I alluded to earlier, the ALJ's finding was also fully consistent with the state agency psychologist who found Ms. Pate capable of performing repetitive, unskilled tasks on a sustained basis in a work environment, and that she appeared capable of handling work stressors and social interactions that would be required in unskilled work. So Ms. Pate's biggest hurdle in this case, Your Honors, involves her inability to answer a basic question. What evidence supports greater limitations than those adopted by the ALJ? Ms. Pate significantly is unable to direct this court's attention to any specific evidence that would warrant greater mental limitations than those adopted by the ALJ in his RFC determination. In her brief, Ms. Pate only generally refers to her extensive mental health history and her limited education. However, at no point does Ms. Pate provide specific evidentiary references establishing deficits in concentration, persistence, or pace. And as the ALJ properly determined, the evidence as a whole suggests otherwise. Unlike the claimants in Yurt and Crump, Ms. Pate presented no evidence of persistent or frequent concentration difficulties. And please keep in mind the distinction between the claimants in those two cases and Ms. Pate's evidence. In Yurt, the claimant experienced, among other things, auditory hallucinations and bouts of uncontrollable rage. There were extreme temperamental deficiencies. And Ms. Crump had a psychosis and attention impairment. She was hospitalized and medicated involuntarily for mental health symptoms for three weeks and would be off task 20% of the time. Here, Ms. Pate was not diagnosed with the psychosis. She was not impaired attention in a healthcare provider's treatment. She was not hospitalized for mental health symptoms, let alone for three weeks. So, Your Honors, given the limited evidence of Ms. Pate's difficulties with concentration, persistence, or pace, the ALJ acted appropriately in limiting her to performing simple routine tasks with simple work-related decisions. In accordance with the bee stick decision from the U.S. Supreme Court, we would ask that this ALJ should receive who is at the hearing and personally observe the claimant's testimony. And finally, in the absence of evidence that Ms. Pate had additional limitations that the ALJ did not consider, we respectfully submit that this court find the ALJ's RFC and corresponding hypothetical to the vocational expert were appropriate to the record. And we therefore would ask for a decision upholding the ALJ's decision. Unless there are any questions, I thank you very much for your time today. Thank you. Mr. Forbes. Apparently Zoom thought it would be good to unmute me at that point. Can you hear me now? Yes. Okay. There is no absence of evidence. There is a treating psychiatrist opinion that is focused on the competitive work environment. The reason that there is a perceived consistency between that and the treatment notes is the treatment notes center on the therapeutic environment, not the competitive work environment. The testimony of the claimant is not as great as it could have been, I suppose, but not everybody is a great testifier. And people with mental health issues sometimes don't always appreciate the severity of their own situations. So there is evidence here. And I actually, I mean, Yurt and Crump were my clients. Yes, they were from a diagnostic standpoint, they were suffering probably from more severe types of mental disease. But that doesn't mean that every person who has a non-psychotic disease can do unskilled work. Unskilled work is like the minimum in one sense. And one final point, the word moderate is used by the agency, it has evolved. But regardless of how moderate is defined, the question is, are there work preclusive limitations supported by the mental health evidence? And there are those limitations here. And since the council did bring up daily activities, well, these daily activities probably fall under the Beardsley case, the Bjorns and Beardsley doctrine, they're not really reflective of competitive work either. Her mom is like the executive director of the United Way. So yeah, she can participate in some events, but mom's right there with her. So I'm not sure that's reflective. If you have a baby, you got to take care of it, even if you have mental health deficits as long as those deficits aren't harmful to the children. So that kind of falls under Beardsley also. Thank you very much, your honors. I appreciate it. And that is all I have today. Thank you. All right. Thank you very much. Our thanks to both council. The case is taken under advisement.